MISSOURI STATE LIFE INS. CO. v. HINKLE.—74 S. W. (2d) 1082.

Eastern Section.   April 28, 1934.

Petition for Certiorari denied by Supreme Court, October 13, 1934.

Cox, Taylor & Epps, of Johnson City, and Harold D. Knight, of St. Louis, Mo., for Missouri State Life Ins. Co.

Divine, Guinn & Mitchell, of Johnson City, for Eureka Hinkle.

DeWITT, J. This action was brought by Eureka Hinkle, widow of Earl Hinkle, as beneficiary, upon a certificate issued to him while he was an employee of the American Glanzstoff Corporation, by the Missouri State Life Insurance Company, under a policy of group insurance which it had issued upon the employees of said corporation. Earl Hinkle died on January 7, 1931. His certificate was dated December 10, 1929. It provided that under and subject to the terms and conditions of a group policy of insurance No. G—2592, issued and delivered to the American Glanzstoff Corporation, the employer, the Missouri State Life Insurance Company insured the life of Earl Hinkle for the sum of $1,100 payable to his wife, Eureka Hinkle, as beneficiary, "if death shall occur while an employee of the employer during the continuance of the insurance under this certificate." It further provided:

"The insurance provided by the said policy for the employee shall terminate at the expiration of the period for which premiums are last deducted by the employer from the pay of the employee or remitted by the employee to the employer, unless the employee shall elect to continue the insurance in accordance with the conversion privilege given on the second page of this certificate."

The employment of Earl Hinkle was terminated on December 4, 1930, by discharge by the corporation.

On November 10, 1930, the sum of 60 cents was deducted from his wages and used to pay the premium on this insurance until December 10, 1930. No further payment of premiums was made.

The group or master policy also contained the provision that the insurance on any employee should cease at the expiration of the policy month for which premiums were last received by the company for such employee, except that if an employee were disabled, given leave of absence, or temporarily laid off, the employment need not be considered terminated unless the employer should so elect. This group policy also provided as follows:

"Individual Certificate of Insurance and Conversion Privilege— The Company will issue to the Employer for delivery to each Employee whose life is insured under this policy, an individual certificate setting forth a statement as to the insurance protection to which he is entitled and to whom payable. Any Employee of the Employer covered under this group policy shall, in case of the termination of insurance for any reason whatsoever, be entitled to have issued to him by the Company without evidence of insurability upon application to the Company made within thirty-one days after

such termination and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, in an amount equal to the amount of protection under such group insurance policy at the time of such termination.''

. ''Grace Period—Thirty-one days of grace will be allowed for the payment of every premium after the first, during which period the policy remains in force.''

This provision for days of grace is not expressly contained in the certificate.

The certificate issued to Earl Hinkle under this policy contained the following:

''Conversion Privilege. The employee shall, in case of the termination of this insurance for any reason whatsoever, be entitled to have issued to him by the Company without evidence of insurability upon application to the Company made within thirty-one days after such termination and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, in an amount equal to the amount of his protection hereunder at the time of such termination.''

On December 10, 1930, the group master policy was canceled by mutual agreement between the insurance company and the employer.

The insured did not undertake to obtain another policy, without furnishing evidence of insurability, but upon payment of premium, within thirty-one days after December 10, 1930.

Out of these provisions and undisputed facts arose the issue whether or not the beneficiary is entitled to recover. The trial judge overruled a motion for the defendant and sustained a motion for the plaintiff, for peremptory instructions; and a judgment was rendered against the insurance company for the amount of the insurance claimed, with interest.

The assignments of error present at last the single proposition that there was no insurance in force upon the life of Earl Hinkle, under the policy and certificate, at the time of his death. It is contended in support of the judgment that under section 3348a8 of Shannon's Code the insurance was in force on January 7, 1931, which was less than one month after the date to which the premium had been paid. This section (chapter 457, Acts of 1907, sec. 1) is as follows:

''No policy of life insurance shall be issued in this state or be issued by a life insurance company organized under the laws

of this state unless the same shall contain the following provisions: . . .

"2. A provision for a grace of one month for the payment of every premium after the first year, which may be subject to an interest charge, during which month the insurance shall continue in force, which provision may contain a stipulation that if the insured shall die during the month of grace, the overdue premium will be deducted in any settlement under the policy."

It is plain that the insurance terminated unless the provisions of the foregoing section are applicable. If it is applicable, it must be read into the contract, although the contract provides that the insurance shall terminate at the expiration of the period for which premiums are last deducted by the employer from the pay of the employee, unless the employee shall elect to continue the insurance in accordance with the conversion privilege.

The cancellation of the group policy on December 10, 1930, terminated the insurance as of that date. This is clearly determined in the analogous case of Davis v. Metropolitan Insurance Company, 161 Tenn., 655, 32 S. W. (2d), 1034, 1035, which involved group insurance under a policy expressly providing: "A grace of thirty-one days without interest charge, will be granted to the employer for the payment of every premium after the first, during which period the insurance shall continue in force." It was held that the contracting parties in a group policy were primarily the employer and the insurance company; and that therefore the employer has the power to cancel a policy of group insurance and such action by it is binding upon the individual employees holding certificates issued thereunder. It was further held that the clause in a group insurance policy providing that a grace of thirty-one days will be granted to the employer for the payment of every premium after the first does not operate to continue a group policy in force after the date of its cancellation by mutual consent of the employer and the insurance company; and that the cancellation or rescission by mutual consent of a life policy prior to the death of the insured completely terminates the rights of the beneficiary thereunder.

These rules are controlling upon the case before us, so that the insurance was not in force at the date of the death of Earl Hinkle. The privilege of conversion within thirty-one days after termination of the insurance did not of itself operate to keep the insurance in force. Upon such termination, something else had to be done which was not done. Application had to be made to the company for another policy and premium thereon had to be paid applicable to the class of risks to which he belonged and to the form and amount of the policy at his then attained age, although it could be done without evidence of insurability. It was a mere option extended for thirty-one days and not a contract to continue

the former insurance. Hinkle had thirty-one days in which to exercise the right of conversion, but as he failed to do so he was not insured, and, as he died without exercising the option, his beneficiary cannot recover. Ætna Life Insurance Company v. Carroll (Ark.), 65 S. W. (2d), 25; Fearon v. Metropolitan Life Insurance Co., 138 Misc., 710, 246 N. Y. S., 701; Duval v. Metropolitan Life Insurance Co., 82 N. H., 543, 136 A., 400, 50 A. L. R., 1276; Beecey v. Travelers' Insurance Co., 267 Mass., 135, 166 N. E., 571.

It was therefore error to refuse to direct a verdict in favor of the insurance company, and consequently to refuse to direct a verdict for the plaintiff. The judgment is reversed, the verdict set aside, and the suit dismissed at the cost of the defendant in error.

Faw, P. J., and Crownover, J., concur.