## SCHOOLEY v. METROPOLITAN LIFE INS. CO.

### No. 8014.

Court of Civil Appeals of Texas. Austin.

Nov. 21, 1934.

Edwin G. Moorhead, of Austin, for appellant.

A. V. Knight and Terrell, Davis, Hall & Clemens, all of San Antonio, for appellee.

BLAIR, Justice.

Appellant, Edith L. Schooley, the widow and beneficiary of Walter A. Schooley, sued appellee, Metropolitan Life Insurance Company, on its policy of group insurance issued to the Southern Pacific Railway Company, insuring the lives of its employees. Appellant alleged that the policy insured the life of her husband for $1,500, as an employee of the railway company. Appellee answered that Walter A. Schooley had been discharged by the railway company, and that under the terms of the policy the insurance risk had terminated prior to his death. On the trial to the court without a jury, it was held that, under the agreed and undisputed facts as applied to the provisions of the insurance contract, the insurance risk had terminated prior to the death of the insured; and accordingly judgment was rendered for appellee; hence this appeal presenting the same question.

The group policy provided: "The Company will issue to the employer for delivery to each employee insured hereunder an individual certificate showing the insurance protection to which such employee is entitled, the beneficiary to whom payable, together with a statement that in case of the termination of the employment with the employer, for any cause whatsoever, such employee shall be entitled to have issued to him by the company, without evidence of insurability, and upon application to the company within thirty-one days after such termination of employment and upon payment of the premium then applicable to the class of risk to which he belongs and to the form and amount of the policy at his attained age (nearest birthday), a policy of life insurance in any of the forms

customarily issued by the company, except Term Insurance, in an amount equal to the amount of his protection under this policy at the time of termination. Upon termination of employment, the insurance of any discontinued employee under this policy automatically and immediately terminates as of the last day of the insurance month during which termination of employment occurred, and the company shall be released from any further liability of any kind on account of such person unless an individual policy is issued in accordance with the above provision. Re-employment will be classed as new employment in accordance with Paragraphs 12 and 15 hereof and a new certificate will be issued."

The individual certificate and riders issued to Walter A. Schooley provided that, subject to the terms and conditions of the group policy, he was insured for $1,500; and further provided:

"If death occur while the employee is in the employ of the employer, or prior to the next monthly premium due date of the Group Policy following the date of discontinuance of employment, the amount of insurance in force on said employee, in accordance with Group Policy as above, will be paid to Edith L. Schooley, beneficiary."

"Privilege of Continuance.

"In the event of the termination of the employment for any reason whatsoever, the employee shall be entitled to have issued to him by the Metropolitan Life Insurance Company, without further evidence of insurability, and upon application made to that company within thirty-one days after such termination, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by such company, term insurance excepted, in an amount equal to the amount of his protection under the Group Insurance Policy at the time of such termination."

The agreed and undisputed facts showed that for several years Schooley was employed by said railway company at Burnet, Tex., as pumper, but "was relieved of his duties as pumper * * * at the close of August 12th, 1930, because of the closing of another and different pumping station and the transfer of the employee at the other station to Burnet, Texas, to succeed Schooley, the transferred employee having seniority of service over" him. From the wages of Schooley for his services from August 1st to 12th, 1930, amounting to $33.75, the railway company deducted 70 cents to cover the pro rata charge on his premium on the group policy which extended the protection to and including August 31, 1930, the next premium date on the group policy. Schooley died September 8, 1930, without having made any application for an individual policy of insurance under the privilege granted by the group policy.

Appellant seems to contend that the option privilege contained in the group policy, granting Schooley thirty-one days after his employment terminated in which to apply for an individual policy in the sum of his group insurance on any policy form customarily issued by appellee, automatically continued the group policy protection for a period of thirty-one days. The contention is not sustained, because the group policy expressly provided that, if the employee were discharged for any reason, the group policy protection would continue only until the last day of the insurance month during which his employment terminated; that each insurance month terminated on the last calendar day of each month; and that monthly premiums became due and payable on the last day of each month. Since the agreed and undisputed facts showed that Schooley's employment ended August 12, 1930, that his premium was paid on the group policy only up to and including August 31, 1930, and that he died September 8, 1930, it is manifest that protection under the group policy had terminated prior to the death of the insured, because the group policy expressly provided that its protection would continue only until the last day of the month during which the employment terminated; and this suit is for recovery upon the group policy.

No Texas authority appears to have construed a similar insurance contract; but the same or similar group insurance policies have been construed by courts in other states, and without exception they sustain our above conclusions, that the thirty-one day option privilege during which an employee may after discharge secure on application an individual policy has no relation to and does not control or affect the provisions of the group policy with regard to the duration and termination of the group protection. Apparently an identical policy to the one in suit was construed in the case of Duval v. Metropolitan Life Ins. Co., 82 N. H. 543, 136 A. 400, 406, 50 A. L. R. 1276, wherein it was held that:

"It is argued that the heading 'privilege of continuance' means that the original insurance continued for 31 days, without any ac-

888

tion taken by the insured. No such meaning can fairly be given to the expression used. It means a favor offered to the insured, which he is at liberty to accept or not as he chooses. That this is its true meaning is made certain by the terms of the privilege which are distinctly stated. The party who has been insured may take out regular life insurance without medical examination. He need not furnish evidence of insurability. This is all the privilege undertakes to give.

"There is no statement, either direct or indirect, that the original insurance 'while in the employ' is continued in the meantime."

But appellant says that appellee is a New York corporation, and that since the statutes of that state as well as of Texas provide that in the case of group insurance the insured employee shall have thirty-one days or one month in which to pay any premium upon any group policy, and that since appellee was discharged August 12, 1930, with insurance paid to August 31, 1930, and died September 8, 1930, his insurance was in force on the date of his death, notwithstanding the provision in the group policy that, "upon termination of employment, the insurance of any discontinued employee under this policy automatically and immediately terminates as of the last day of the insurance month during which termination of employment occurred." The point was decided against appellant in the case of Fearon v. Metropolitan Life Ins. Co., 138 Misc. 710, 246 N. Y. S. 701, 704, wherein it was held that: "There is nothing in the statute that says, expressly or by reasonable implication, that the insurance continues for thirty-one days, or for any period, after the termination of the employment. A legislative intent to this effect could easily have been expressed. A period of continuance could have been provided, just as provision was made for days of grace for nonpayment of premium in life insurance policies 'during which period of grace the policy shall continue in full force.' Insurance Law, § 101, subd. 1 (as amended by Laws 1923, c. 28). In fact, the statute points otherwise; it is the application that must be made within thirty-one days; the policy might be issued thereafter. If application were made on the thirty-first day, the policy would not, in the ordinary course of events, be written on that day. There would be no necessity for it. The applicant would be entitled to the policy no matter if it took weeks to come through. Could it be contended that the coverage under the group policy would continue until after the thirty-one days and the issu-

ance of the new policy weeks later? Coverage might be obtained, pending the issuance of the new policy, by a binder issued on the application, as is frequently done, but the protection would then be not under the old policy but under the new one to be issued. The statute does not make a binder or other ad interim protection compulsory."

The Texas statute (art. 4764a, Vernon's Ann. Civ. St.) was enacted in 1931, after the insurance contract in suit had terminated, and of course has no application. But even so, it is in all respects similar to the New York statute aforementioned; and suffice it to say here that an examination of our thirty-one day option privilege statute shows that it contains nothing, either expressly or by reasonable implication, which would continue in force the group policy for such a period after the termination of the employment; but that said option period relates solely to the time in which the application for an individual policy may be made after the termination of employment.

Our above conclusions render unnecessary a discussion of appellant's several remaining propositions with regard to when the protection of the group policy terminated.

But appellant says that it may be inferred, from the agreement that the insurance of Schooley was paid to August 31, 1930, that he was still an employee of the railway company. Such contention is in the face of the agreed facts that Schooley was relieved of his duties at the close of August 12, 1930; and that the 70 cents paid out of his wages extended the group policy protection to August 31, 1930, under the terms of the group policy. The agreed facts state that Schooley was relieved of his duties at the close of August 12, 1930, and was succeeded by another employee having seniority of service over him. Appellant offered no evidence showing what was the meaning of such a discharge, or that Schooley was ever re-employed. It was incumbent upon appellant to allege and prove that Schooley was an employee within the meaning of the group policy, construed in connection with the certificate and riders issued to him, at the time of his death; and the unexplained agreement that he was relieved of his duties on August 12, 1930, does not meet this burden. Wann v. Metropolitan Life Ins. Co. (Tex. Com. App.) 41 S.W.(2d) 50; 24 Tex. Jur., 1227; and cases there cited.

We find no error in the trial court's judgment, and it will be affirmed.

Affirmed.